UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/2026
```

CLEON CLARK

                              Plaintiff,

        -against-

HUTCHINSON, et al.,

                              Defendants.

No. 23-cv-3271 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Cleon Clark ("Plaintiff") brings this action under 42 U.S.C § 1983 against Defendants the City of Mount Vernon, Lieutenant Gregory Addison, Sergeant Elio T. Rucci, and Police Officers Michael Hutchins, Joseph C. Saetta, Nicholas Kikis, Derek A. Williams, Charles A. Rizzo, David M. Culbert, Stefano R. Silvestri, Julien N. Martinez, Michael Timpone, Lytel Martin, and Jonathan Gibson-Price (collectively, the "Defendants" or "Defendant Officers").[1] Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him and his Fourth Amendment rights through false arrest and the use of excessive force in connection with two unrelated arrests on August 20, 2021, and July 8, 2022.[2] Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 100.)

---

[1] Although Plaintiff is a *pro se* litigant, he received assistance from the City Bar Justice *Pro Se* Legal Assistance Project in the Southern District of New York in preparing his opposition papers. (ECF No. 103, "Pl. Opp.," at 1, n.1.)

[2] The First Amended Complaint ("FAC") alleges violations of the First, Fourth, Fifth, and Sixth Amendments. (Defs.' Ex. A at 5.) Plaintiff now appears to have abandoned his Fifth and Sixth Amendment claims, as his opposition papers state that he brings only First and Fourth Amendment claims. (Pl. Opp. at 1.) When a party "does not address [a] claim in either his memorandum or affidavits and exhibits submitted in opposition to Defendants' motion for summary judgment, the Court deems him to have abandoned this claim." *Turner v. Sidorowicz*, 2016 WL 3938344, at *4 (S.D.N.Y. July 18, 2016) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)). The Court deems the Fifth and Sixth Amendment claims abandoned and will address only Plaintiff's First and Fourth Amendment claims.

For the following reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

Plaintiff and Defendants submitted briefs, statements of material facts pursuant to Local Rule 56.1, responses to the opposing statements of material facts, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

## I.    August 20, 2021 Arrest

At approximately 7:15 p.m. on August 20, 2021, Plaintiff Cleon Clark was walking along 4th Avenue in the City of Mount Vernon, New York. (Defs.' Ex. B, "Pl. Dep.," Tr. 22:4–10.) At that time, Defendant Officers Michael Hutchins, Nicholas Kikis, and Joseph Saetta were conducting a traffic stop in front of 133 South 4th Avenue. (ECF No. 102, Ex. A, "Defs.' 56.1," ¶ 9.) This, and the following events, were recorded. (Defs.' Ex. J.) Plaintiff stopped on the sidewalk to observe the officers conducting the stop. (Defs.' 56.1 ¶ 10.) None of the officers were equipped with body-worn cameras. (Id. ¶ 11.) Plaintiff was not affiliated with the vehicle subject to the stop. (Id. ¶ 12.)

Shortly after arriving, Plaintiff dropped his belongings on the sidewalk and stepped toward the stopped vehicle. (Id. ¶ 13.) Plaintiff, however, remained on the sidewalk. (Defs.' Ex. J.) Plaintiff also began speaking with Officer Saetta about the traffic stop. (Defs.' 56.1 ¶ 16.) Officer Hutchins recognized Plaintiff from prior encounters in the community and knew him to be an individual who had previously been arrested by the Mount Vernon Police Department ("MVPD"). (Id. ¶¶ 14–15.) Officer Hutchins was also aware that Plaintiff had a history of mental health conditions. (Id. ¶ 14.) The MVPD incident report states that at least one officer felt unsafe due to Plaintiff's proximity to the traffic stop. (Defs.' Ex. F.) As a result, Officer Hutchins joined Officer

2

Saetta, began speaking with Plaintiff, and directed him to step away from the vehicle. (Defs.' 56.1 ¶ 21.) Officer Kikis subsequently joined the interaction. (Defs.' Ex. J.)

Officer Hutchins directed Plaintiff to step away from the vehicle three times. (Defs.' 56.1 ¶ 22.) Plaintiff did not comply. (*Id*.) Up to that point, Plaintiff had remained in the same location with his arms crossed. (Defs.' Ex. J.) Due to Plaintiff's noncompliance, Officer Hutchins placed both hands on Plaintiff's upper body and pushed him backward. (*Id*.) Plaintiff tripped over his own belongings but did not fall to the ground. (*Id*.) Officer Hutchins then walked toward Plaintiff. (*Id*.) In response, Plaintiff began yelling at Officer Hutchins asking why he was pushed. (*Id*.; Pl. Aff. ¶¶ 26, 34.) Plaintiff also attempted to confront Officer Hutchins but was stopped by Officer Kikis, who positioned himself between the two. (Defs.' Ex. J.) Although Officer Kikis stood between Plaintiff and Officer Hutchins, both Plaintiff and Officer Hutchins appeared to be verbally confronting one another. (*Id*.) Officer Hutchins also attempted to confront Plaintiff but was impeded by Officer Kikis, who remained positioned between them. (*Id*.) Throughout this encounter, Plaintiff periodically had his hands clenched into fists. (*Id*.)

Plaintiff eventually positioned himself directly in front of the vehicle that had initially been stopped. (*Id*.) Officers Hutchins, Kikis, and Saetta were on the sidewalk and remained in front of Plaintiff. (*Id*.) Although Officer Kikis attempted to defuse the situation by speaking with Plaintiff, Plaintiff nevertheless attempted to approach Officer Hutchins. (*Id*.) At that point, Plaintiff was standing on the sidewalk with his back against the storefronts. (*Id*.) Officers Hutchins, Kikis, and Saetta continued speaking with Plaintiff in an effort to defuse the situation. (*Id*.) The officers also directed Plaintiff to step back and to leave the area. (Defs.' 56.1 ¶ 34.) Plaintiff did not comply and appeared to raise his voice while gesturing his hands at Officer Hutchins. (Defs.' Ex. J.)

The officers assert that Plaintiff again balled his fists and flexed his arms toward Officer Hutchins. (Defs.' 56.1 ¶ 36.) As a result, Officer Hutchins pushed Plaintiff against the storefront wall in order to place him under arrest. (Defs.' Ex. J.) Officers Kikis and Saetta assisted once Plaintiff was against the wall. (*Id*.) Plaintiff appeared to struggle against the wall, which led all three officers to push him to the ground. (*Id*.) Plaintiff was placed face down on his stomach. (*Id*.) At that point, it is unclear from the video recording what was occurring because bystanders began standing in front of the parties. (*Id*.) The officers assert that Plaintiff continued to resist arrest during this time. (Defs.' 56.1 ¶¶ 42–43.) Plaintiff disputes this account. (Pl. Dep. Tr. 29:19–21.) Plaintiff further alleges that he "felt something" while being arrested, suggesting that he was beaten by the officers. (*Id*. Tr. 30:17–20.) Each officer submitted a "use of force" report describing the force employed during the incident. (Defs.' Exs. G–I.) Other than noting that the officers had to grab and restrict Plaintiff's arms to handcuff him, none of the reports indicated that the officers struck Plaintiff. (*Id*.) Plaintiff also could not recall whether he was struck during the interaction. (Pl. Dep. Tr. 30:17–20.) Plaintiff nevertheless alleges that his handcuffs were too tight and that the officers refused to loosen them. (*Id*. Tr. 31:4–7.)

Following his arrest, Plaintiff was transported to the MVPD precinct. (Defs.' 56.1 ¶ 48.) While at the precinct, Plaintiff complained of pain in his right arm, and an ambulance was called to the cellblock. (*Id*. ¶ 49.) Plaintiff later testified that, as a result of his arrest, he sustained a scrape on his head, a scratch on his ear, and pain in his back. (Pl. Dep. Tr. 33:12, 35:11–16, 36:2–3.) Plaintiff's arrest photographs also show a laceration on his left elbow and slight swelling on his right forearm. (Defs.' Ex. Q at 2, 6.) Once the ambulance arrived, Plaintiff refused medical attention. (Defs.' 56.1 ¶ 50.) Plaintiff also claims to have suffered depression due to his arrest, though he did not seek mental health treatment. (*Id*. ¶¶ 103–104.)

Officer Hutchins thereafter charged Plaintiff with obstruction of governmental administration ("OGA") (N.Y. Penal Law § 195.05), disorderly conduct (N.Y. Penal Law § 240.20(1)), and resisting arrest (N.Y. Penal Law § 205.30). (*Id*. ¶ 51.) Plaintiff's charges were subsequently resolved by an adjournment in contemplation of dismissal. (*Id*. ¶ 53.) Plaintiff was ultimately released from MVPD custody after approximately 45 minutes of arriving at the precinct. (*Id*. ¶ 106.)

## II.   July 8, 2022 Arrest

Almost a year later, Plaintiff was again arrested by the MVPD. This arrest was also recorded. (*See* Defs.' Exs. W, X, AA.) At approximately 8:35 a.m., Plaintiff was present at an AutoZone store located at 1 Pathmark Plaza in Mount Vernon, New York. (Defs.' 56.1 ¶ 108; Defs.' Ex. T.) Plaintiff arrived at the store on a motorized scooter. (Defs.' 56.1 ¶ 109.) Plaintiff alleges that he was purchasing spray paint. (Pl. Dep. Tr. 40:2–5.) After leaving the store, Plaintiff drove off on his motorized scooter. (Defs.' 56.1 ¶ 110.)

Shortly thereafter, Ms. Rosa Vives, the store's security guard, called 911 reporting that a man had stolen an item from the store. (Defs.' Ex. U.) Ms. Vives described the suspect as a Black male wearing a black hat, white pants with blue writing, a blue polo shirt, and having a bike outside the store. (*Id*.) Officer Julien Martinez was dispatched to the AutoZone store. (Defs.' 56.1 ¶¶ 111–12.) He was not issued with a body-worn camera. (*Id*.) Upon arrival, Officer Martinez spoke with Ms. Vives, who confirmed her earlier description and stated that the suspect had placed an item in a bag before leaving. (*Id*. ¶ 116.) At the same time, Officer Michael Timpone was dispatched to the area of South 3rd Avenue and East 3rd Street to canvass for the suspect in connection with the alleged larceny. (*Id*. ¶ 117.) Officer Timpone was informed that the suspect was a Black male with a cast on his arm. (*Id*.)

While Officer Martinez was speaking with Ms. Vives, she observed the suspect—Plaintiff—leaving the parking lot on his motorized scooter. (*Id*. ¶ 118.) Plaintiff was not wearing a helmet. (*Id*. ¶ 119.) Officer Martinez returned to his MVPD vehicle, activated his emergency lights and sirens, and attempted to stop Plaintiff. (*Id*. ¶ 120.) Plaintiff did not comply, later testifying that he did not believe the police were attempting to pull him over. (Pl. Dep. Tr. 42:7–13.) The parties dispute whether Plaintiff made illegal U-turns, rode against oncoming traffic, or operated his scooter on the sidewalk. (Defs.' 56.1 ¶¶ 122–123.) Officer Martinez nonetheless pursued Plaintiff over several streets and blocks. (*Id*.)

During the pursuit, Officer Timpone received a radio transmission that the suspect was continuing northbound on South 2nd Avenue on a scooter or motorbike. (*Id*. ¶ 124.) Officer Timpone then observed an MVPD vehicle pursuing a dark-colored motorized scooter operated by a Black male wearing a dark shirt and a white cast on his arm. (*Id*.) Plaintiff drove into the parking lot of 1 Bogopo Plaza and exited onto East 2nd Street. (*Id*. ¶ 125.) Officer Timpone pursued Plaintiff for several blocks and followed him to the entrance of the "Food Bazaar," where Plaintiff drove toward him. (*Id*. ¶ 126.) Officer Timpone made a sharp left turn to avoid a collision. (*Id*. ¶ 127.) He then continued toward the rear entrance of the Food Bazaar and observed Plaintiff speed out onto southbound 3rd Avenue. (*Id*. ¶ 128.)

At some point, Plaintiff slowed his speed, prompting Officer Martinez to exit his vehicle and pursue Plaintiff on foot. (*Id*. ¶ 129.) While proceeding northbound on South 3rd Avenue, Plaintiff struck Officer Timpone's vehicle. (*Id*. ¶ 130.) Officer Martinez then grabbed Plaintiff's upper body in an attempt to remove him from the scooter. (Defs.' Ex. W.) Officer Timpone exited his vehicle and assisted in removing Plaintiff from the scooter. (*Id*.) Officer Relvas and Probation Officer Anderson arrived and provided additional assistance. (*Id*.) The officers were able to

remove Plaintiff from the scooter; although the scooter fell, Plaintiff remained standing. (*Id.*) After Plaintiff's noncompliance, all four officers pushed him onto Officer Timpone's vehicle before lifting and placing him on the ground on his stomach. (Defs.' Ex. X.) The officers then surrounded Plaintiff to restrain him. (*Id.*)

Although Plaintiff's arrest was recorded, his actions once on the ground are obscured by the surrounding officers. (*Id.*) The video recording nonetheless depicts Officers Martinez and Timpone struggling to control Plaintiff's right arm. (*Id.*) According to Officers Martinez and Timpone, Plaintiff began resisting arrest while on the ground by placing his right arm underneath his body and tightening his muscles. (Defs.' 56.1 ¶¶ 135–136.) As a result, Officer Martinez struck Plaintiff once on the left side of his face with a closed fist. (*Id.* ¶ 137; Defs.' Ex. X.) The recording of Plaintiff's arrest shows that shortly after Officer Martinez struck Plaintiff, the officers appear to reposition Plaintiff's right arm. (Defs.' Ex. X.) Around this time, an unidentified civilian approached and began recording the arrest from a different vantage point. (Defs.' Ex. AA.) That video depicted Officer Martinez holding down Plaintiff's upper back and neck while the remaining officers restrained Plaintiff's arms and legs. (*Id.*) Plaintiff was eventually handcuffed—only on his right arm due to a cast on his left arm—and placed in leg shackles. (Defs.' 56.1 ¶¶ 142–43.)

Plaintiff was subsequently transported to a hospital, where he received treatment for injuries allegedly sustained during the arrest. (*Id.* ¶¶ 144–45.) He was then transferred to the MVPD precinct, where officers learned that his driver's license was suspended and that the motorized scooter was not registered. (*Id.* ¶¶ 145–46.) Lieutenant Gregory Addison later arrived and interrogated Plaintiff. (*Id.* ¶ 150.) Lieutenant Addison also photographed Plaintiff's head where Plaintiff claimed he had been punched and noted no visible injuries. (*Id.* ¶¶ 151–52.)

Lieutenant Addison informed Plaintiff that he was being charged with reckless driving (N.Y. Penal Law § 275.30) and reckless endangerment (N.Y. Penal Law § 120.20). (*Id*. ¶¶ 154–55.)

Following the arrest, Officer Timpone transported Plaintiff to Montefiore Hospital for further medical evaluation. (*Id*. ¶ 156.) While at the hospital, Plaintiff complained of pain to his head and wrist. (*Id*. ¶¶ 171, 182.) Plaintiff underwent a CT scan and X-rays, both of which were normal. (*Id*. ¶ 173.) Plaintiff was discharged without further treatment, other than being prescribed a muscle relaxant. (*Id*. ¶¶ 183, 186.) Plaintiff's charges from the July 8, 2022 arrest were eventually resolved by an adjournment in contemplation of dismissal. (*Id*. ¶ 179.)

## PROCEDURAL HISTORY

On April 18, 2023, Plaintiff commenced this action against Defendants. (ECF No. 1.) Defendants filed an Answer on August 1, 2023. (ECF No. 18.) During the course of discovery, Plaintiff filed the FAC on June 18, 2024. (ECF No. 37.) On August 7, 2025, Defendants moved for summary judgment, submitting a memorandum of law in support of the motion along with a Local Rule 56.1 statement of undisputed material facts. (ECF Nos. 100–102.) Plaintiff opposed the motion and filed a counterstatement to Defendants' Rule 56.1 statement. (ECF No. 103.) Plaintiff also filed a supplement Local Rule 56.1 statement of material facts.[3] (*Id*.) Defendants then filed a reply memorandum in further support of their motion and a reply to Plaintiff's supplement Rule 56.1 statement. (ECF No. 104.)

## LEGAL STANDARD

---

[3] In addition to responding to Defendants' Rule 56.1 statement, Plaintiff submitted a "[s]upplement" 56.1 statement purporting to set forth material facts. (ECF No. 103, Ex. 2.) Under Local Rule 56.1, a non-moving party may respond to the moving party's numbered paragraphs and, if necessary, include paragraphs identifying genuinely disputed facts—but may not file a separate, free-standing statement of facts. *Emanuel v. Gap, Inc.*, 2022 WL 3084317, at *2 (S.D.N.Y. Aug. 3, 2022) (citing *Estevez v. Berkeley Coll.*, 2021 WL 3115452, at *11 (S.D.N.Y. July 19, 2021)). Accordingly, the Court will not consider Plaintiff's supplemental Rule 56.1 statement.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, inclusive of deposition testimony, documents, affidavits, and declarations, *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing… that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus then shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must "draw all rational inferences in the non-movant's favor" while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"). Rather, in answering the primary inquiry of "whether there is the need for a trial," the court must determine "whether a fair-minded jury *could* return a verdict for the plaintiff [or non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 250, 252. Summary judgment

9

should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

When a *pro se* litigant is involved, the same summary judgment standards apply. *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015). However, "the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Id*. (quoting *Knowles v. N.Y City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

## DISCUSSION

Defendants move for summary judgment on several grounds: (1) Plaintiff has abandoned claims against certain Defendants; (2) Plaintiff has abandoned certain potential New York State law claims; (3) Plaintiff cannot establish a genuine dispute of material fact as to his Fourth Amendment false arrest and excessive force claims; (4) Defendants are entitled to qualified immunity in their individual capacities; and (5) Plaintiff's First Amendment retaliation claim is untimely. (*See generally* ECF No. 102, "Defs.' Mem."; ECF No. 104, "Defs.' Reply."). The Court addresses each argument in turn.

I.    **Threshold Matters**

   A.  **Lack of Personal Involvement of Certain Defendants**

Defendants argue that all claims asserted against Defendant Officers Williams, Rizzo, Culbert, Silvestri, Rucci, Martin, Gibson-Price, and Addison must be dismissed because Plaintiff does not contest their lack of personal participation in the events of August 20, 2021, and July 8, 2022. (Defs.' Reply at 1.) When seeking monetary damages under § 1983, as Plaintiff does here, it is a "prerequisite" that he demonstrate the "personal involvement of defendants in [the] alleged

10

constitutional deprivations." *Kirby v. Cruz*, 2025 WL 2886488, at *1 (2d Cir. Oct. 10, 2025) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)). Plaintiff's opposition acknowledges that there is no genuine dispute of material fact regarding the personal participation of these Defendants. (Pl. Opp. at 30.) The Court therefore dismisses all claims asserted against them.

### B. Abandonment of Potential New York State Law Claims

Defendants next argue that any potential New York State law claim—*i.e.*, false arrest, assault, battery, or any tort-based claim—should be dismissed as untimely. (Defs.' Mem. at 10.) Plaintiff failed to respond to this argument. (*See generally* Pl. Opp.) For this reason, Defendants contend that any such claims should be dismissed as abandoned. (Defs.' Reply at 1.)

Courts deem a "claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Ragland v. City of New York*, 2022 WL 580923, at *7 (S.D.N.Y. Feb. 25, 2022). This principle applies equally in the *pro se* context. *See, e.g.*, *Daley v. Cablevision Sys. Corp.*, 2016 WL 880203, at *8 (S.D.N.Y. Mar. 7, 2016) ("a *pro se* plaintiff who does not address a moving party's argument regarding a claim will be deemed to have abandoned that claim"), *aff'd*, 675 F. App'x 97 (2d Cir. 2017); *Oparaji v. Atl. Container Line*, 2008 WL 4054412, at *12 (S.D.N.Y. Aug. 28, 2008) (same), *aff'd*, 363 F. App'x 778 (2d Cir. 2010).

Because Plaintiff's opposition fails to respond to Defendants' argument that any New York State law claims are time-barred, those claims are deemed abandoned. Although the Court acknowledges Plaintiff's *pro se* status, his opposition was nevertheless prepared with the assistance of the Federal *Pro Se* Legal Assistance Project. (Pl. Opp. at 1, n.1.) Plaintiff's *pro se* status does

not excuse his failure to respond, and any New York State law claims are therefore dismissed as abandoned.

### C.  Municipal Liability

Defendants notably do not move to dismiss the claims asserted against the City of Mount Vernon.  (*See generally* Defs.' Mem.)  Nor does Plaintiff advance any argument concerning the City of Mount Vernon in opposition.  (*See generally* Pl. Opp.)  The Court nevertheless examines the City of Mount Vernon's potential liability in this action.

A municipality such as the City of Mount Vernon may be sued directly for constitutional violations under § 1983.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  A municipality, however, cannot be held liable for acts of "its employees below the policy-making level solely upon the basis of *respondeat superior*."  *Byrd v. City of New York*, 2018 WL 259316, at *12 (S.D.N.Y. Jan. 2, 2018); *see also Johnson v. N.Y.C. Police Dep't*, 2016 WL 3277261 at *2 (2d Cir. June 8, 2016); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 314–15 (2d Cir. 2015).  Rather, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–83 (1986); *Johnson*, 2016 WL 3277261 at *2; *Littlejohn*, 795 F.3d at 314–15.

Despite naming the City of Mount Vernon as a defendant, Plaintiff fails to plead or adduce any evidence of a municipal custom or policy giving rise to the alleged harm, either in the FAC or in his opposition.  (*See generally* Defs.' Ex. A; Pl. Opp.)  Instead, Plaintiff relies solely on the actions of the Officer Defendants.  (*Id.*)  This is insufficient to sustain municipal liability—even if a reasonable jury could conclude that an individual defendant violated Plaintiff's constitutional

rights. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy [that] can be attributed to a municipal policymaker." *Vasquez v. Cnty. of Rockland*, 2020 WL 883514, at *14 (S.D.N.Y. Feb. 24, 2020) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). The Court therefore dismisses all claims against the City of Mount Vernon.

## II.    Fourth Amendment – False Arrest Claims

Defendants argue that Plaintiff's false arrest claims fail because there was probable cause, or at the very least arguable probable cause, for the arrests that occurred on August 20, 2021, and July 8, 2022. (Defs.' Mem. at 11.) In response, Plaintiff argues that a genuine issue of fact exists as to whether there was probable cause with respect to the August 20, 2021 arrest only. (Pl. Opp. at 27–29.) Because Plaintiff's opposition addresses Defendants' argument solely as to the August 20, 2021 arrest, Defendants further contend that Plaintiff has abandoned his false arrest claim arising from the July 8, 2022 arrest. (Defs.' Reply at 1.) The Court reviews each argument in turn.

### A.  August 20, 2021 Arrest

The Court first addresses Defendants' argument that probable cause existed to arrest Plaintiff on August 20, 2021. (Defs.' Mem. at 12.) On that date, Plaintiff was arrested for OGA (N.Y. Penal Law § 195.05), disorderly conduct (N.Y. Penal Law § 240.20(1)), and resisting arrest (N.Y. Penal Law § 205.30). (Defs.' Ex. F at 1.) The parties, however, appear to only focus on the OGA and disorderly conduct charges. The Court thus only examines whether probable cause existed for those two charges.

To establish a false arrest claim under § 1983, a plaintiff must show that (1) "the defendant intended to confine [the plaintiff]," (2) "the plaintiff was conscious of the confinement," (3) "the

13

plaintiff did not consent to the confinement," and (4) "the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal quotation marks omitted).

Probable cause serves as a complete defense to a claim of false arrest. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). An officer has probable cause to arrest when he possesses "reasonably trustworthy information as to[ ] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). The relevant inquiry is "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). There need not have been probable cause for the specific charge invoked at the time of arrest; rather, probable cause to arrest for any offense is sufficient. *Ackerson*, 702 F.3d at 20. Once a law enforcement officer has reasonable grounds for believing that probable cause exists, the officer is not "required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

In the context of § 1983 false arrest claims, an arresting officer is entitled to qualified immunity if there was "arguable probable cause" at the time of the arrest. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). Arguable probable cause exists where either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski*, 723 F.3d at 390). This analysis turns on "the information possessed by the officer at the

14

time of the arrest," rather than the officer's "subjective intent, motives, or beliefs." *Id.* (quoting *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)). Accordingly, an officer is entitled to qualified immunity unless "'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Figueroa*, 825 F.3d at 100 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### i. Obstruction of Governmental Administration

The Court first examines whether Officers Hutchins, Kikis, and Saetta had probable cause to arrest Plaintiff for OGA based on his refusal to leave the premises of the traffic stop. N.Y. Penal Law § 195.05 provides that:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.

*Kass v. City of New York*, 864 F.3d 200, 206–07 (2d Cir. 2017). An individual may be convicted under this statute when: (1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual acts intentionally. *Id.* (citing N.Y. Penal Law § 195.05). It appears, however, that courts are divided as to whether a physical act—rather than a mere verbal act—is required to sustain a conviction for OGA. For instance, the Second Circuit concluded that "purely verbal interference may not satisfy the 'physical component' under Penal Law § 195.05." *Uzoukwu v. City of New York*, 805 F.3d 409, 414–15 (2d Cir. 2015). There, the court determined that the district court's jury instructions "invited the jury to find for the defendants on the false arrest claim by inaccurately suggesting that they could find probable cause existed to arrest… for obstruction of governmental administration solely because [the arrestee] refused to answer the questions of officers[.]" *Id.* at

15

418. Plaintiff relies on similar authority in his opposition. *See Ekukpe v. Santiago*, 823 F. App'x 25, 29 (2d Cir. 2020) (affirming the district court's conclusion that an officer potentially lacked probable cause to arrest where the arrestee "did not raise his voice, curse, or do anything outside of 'normal conversation,'" and where "[t]his testimony is supported by the surveillance video").

Defendants, of course, disagree with this interpretation and cite authority to the contrary. (Defs.' Reply at 3.) Most notably, Defendants rely on *Maradiaga v. City of New York*, 2020 WL 5849465 (S.D.N.Y. Oct. 1, 2020), for the proposition that verbal conduct may suffice to establish probable cause for OGA. There, the district court granted summary judgment in defendants' favor, concluding that officers had probable cause to arrest the plaintiffs after they refused repeated directives to move away from a traffic safety checkpoint. *Id*. at *4. In *Maradiaga*, officers established a checkpoint and were conducting traffic stops when plaintiffs approached and began recording. *Id*. at *2. Plaintiffs stood less than five feet from a vehicle being searched, and one officer's attention was diverted from the checkpoint as a result. *Id*. The officer directed plaintiffs to step back. *Id*. Although plaintiffs took a single step backward, they refused to move further despite multiple warnings. *Id*. at *2–3. After one plaintiff handed a flyer to an occupant of the vehicle being searched, officers again directed plaintiffs to move back and warned that they were creating a "dangerous situation." *Id*. at *3. When plaintiffs continued to refuse, officers arrested them for OGA. *Id*. The district court ultimately concluded that no genuine issue of material fact existed because "Plaintiffs' defiant actions… presented sufficient probable cause for their arrest for… OGA." *Id*. at *4.

The issue before the Court is whether Plaintiff intentionally interfered with Officers Hutchins, Kikis, and Saetta in the performance of the traffic stop. Upon arriving at the scene, Plaintiff remained on the sidewalk but stood only feet away from the officers and the vehicle

16

subject to the traffic stop.  (Defs.' Ex. J.)  Although other pedestrians were present on the sidewalk observing the traffic stop, Plaintiff remained the closest individual to the vehicle.  (*Id*.)  Defendants contend that Plaintiff failed to leave the officers' zone of safety and diverted their attention from the traffic stop.  (Defs.' Mem. at 13.)  The MVPD incident report documenting Plaintiff's arrest reflects that the Officer Defendants felt unsafe due to Plaintiff's proximity.  (Defs.' Ex. F.)  Officer Hutchins—who was aware of Plaintiff's prior interactions with law enforcement—directed Plaintiff several times to step away from the vehicle.  (Defs.' Ex. J.)  Plaintiff refused to comply. (*Id*.)  Plaintiff characterizes his refusal as a form of "silent dissent."  (Pl. Opp. at 4.)  Plaintiff also admits that he was, in fact, "decid[ing] to ignore [Officer] Hutchins."  (Pl. Aff. ¶ 19.)

While the Court does not condone Officer Hutchins's actions—who, for reasons unclear, appeared to attempt to provoke Plaintiff before being interrupted by another officer—the Court nonetheless finds *Maradiaga* persuasive.  The officers were conducting a traffic stop, which is "especially fraught with danger to police officers."  *Maradiaga*, 2020 WL 5849465, at *4 (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)).  Although Plaintiff remained on the sidewalk while observing the traffic stop, his "presence created a security risk for officers conducting the vehicle checkpoint, and [he] did not comply with numerous directives to move to a safe distance."  *Id*. Plaintiff created such a risk because Officer Hutchins recognized that Plaintiff had been previously arrested by the MVPD and that he suffered from certain mental health conditions.  (Defs.' Ex. C ¶ 6.)  Plaintiff does not dispute this.  (Defs.' 56.1 ¶ 14.)  By "congregating mere feet from the stopped vehicle[,]" and refusing repeated directives to move, Plaintiff "created a distraction for officers, or at the very least, presented an additional unknown factor to officers who were already trying to assess and minimize other potentially emergent safety concerns with the checkpoint."  *Maradiaga*, 2020 WL 5849465, at *4.  The Court does acknowledge that Plaintiff submits an affirmation stating

17

that he was only observing the traffic stop because Officer Hutchins was engaging in unlawful conduct.  (Pl. Aff. ¶ 10.)  However, "a *pro se* party's bald assertions unsupported by evidence… are insufficient to overcome a motion for summary judgment."  *Collier v. City of Mount Vernon*, 2024 WL 4043135, at *7 (S.D.N.Y. Sept. 4, 2024).  Plaintiff's defiance was not a "silent dissent"— "inappropriate or disruptive conduct at the scene of the performance of an official function" can support a charge of OGA, "even if there is no physical force involved."  *Wheeler v. Artola*, 852 F. App'x 589, 591 (2d Cir. 2021) (quoting *Willinger v. City of New Rochelle*, 212 A.D.2d 526, 527 (1995)).  The Court therefore concludes that probable cause existed to arrest Plaintiff for OGA.

### ii.  Disorderly Conduct

The Court next examines whether Officers Hutchins, Kikis, and Saetta had probable cause to arrest Plaintiff for disorderly conduct.  N.Y. Penal Law § 240.20(1) provides that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof… [h]e engages in fighting or in violent, tumultuous or threatening behavior."  *Gonzalez v. Bronx Cnty. Hall of Just. Ct. Officer Mark Hirschman Shield 7421*, 2017 WL 435829, at *10 (S.D.N.Y. Jan. 31, 2017).

There is no dispute that Plaintiff and Officer Hutchins engaged in a heated verbal exchange.  (Defs.' Ex. J.)  Nor is there a dispute that, after Officer Hutchins pushed Plaintiff when he refused to move away from the vehicle subject to the traffic stop, Plaintiff attempted to charge at Officer Hutchins, balled his fists, and flexed his arms in Officer Hutchins' direction.  (*Id*.)  Plaintiff contends that his conduct constituted self-defense.  (Pl. Opp. at 29.)  Plaintiff's account, however, is "blatantly contradicted by documentary evidence," and the Court "need not adopt wholly self-serving testimony contradicted by the objective evidence in the case."  *Carzoglio v. Paul*, 2024 WL 776031, at *6 (S.D.N.Y. Feb. 26, 2024).  Although Officer Hutchins did push Plaintiff, the

18

push was not forceful, and Plaintiff did not fall to the ground. (Defs.' Ex. J.) The video recording further demonstrates that Plaintiff aggressively attempted to charge Officer Hutchins and would have done so but for Officer Kikis' intervention. (*Id*.) Moreover, this confrontation could have been wholly avoided had Plaintiff stepped away from the vehicle subject to the traffic stop as directed several times. Consequently, the Court concludes that Officers Hutchins, Kikis, and Saetta had sufficient probable cause to arrest Plaintiff for disorderly conduct, and as a result, the Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest claims arising from the August 20, 2021 incident.

### B. July 8, 2022 Arrest

The Court next addresses Defendants' abandonment argument with respect to the July 8, 2022 arrest. As the Court has already noted, a non-moving party's claim is considered abandoned when the party fails to address a moving party's argument in any way. *See Ragland*, 2022 WL 580923, at *7. This principle applies even when the non-moving party is proceeding *pro se*. *See Daley*, 2016 WL 880203, at *8; *Oparaji*, 2008 WL 4054412, at *12. Although Plaintiff commenced this action as a *pro se* litigant, his opposition papers were prepared with the assistance of the Federal *Pro Se* Legal Assistance Project. (Pl. Opp. at 1, n.1.) Because Plaintiff failed to address any of Defendants' arguments that probable cause existed for his arrest on July 8, 2022, the Court deems Plaintiff's false arrest claim arising from that arrest abandoned.

### III. Fourth Amendment – Excessive Force Claims

Defendants likewise argue that Plaintiff's excessive force claims fail because the level of force used by the Defendant Officers on August 20, 2021, and July 8, 2022, was objectively reasonable in response to Plaintiff's physical resistance. (Defs.' Mem. at 20.)

Excessive force claims "are properly analyzed under the Fourth Amendment's objective reasonableness standard." *Shamir v. City of New York*, 804 F.3d 553, 556 (2d Cir. 2015) (internal quotations omitted).  A police officer's use of force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Factors relevant to this inquiry include: "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa*, 825 F.3d at 105 (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)).

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 397).  "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Id*. at 103.  "[I]t is… well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021) (quoting *Mesa v. City of New York*, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013)).  However, "[i]t is the force used, not the injuries caused, which must be determined to be *de minimis* as a matter of law." *Campbell v. City of New York*, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)).

20

Qualified immunity nevertheless shields officers from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case… officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (internal quotation marks and citation omitted).

### A. August 20, 2021 Arrest

#### i. Officer Hutchins Pushing Plaintiff

Beginning with the August 20, 2021 incident, Plaintiff first alleges that Officer Hutchins used excessive force when pushing him. (Pl. Opp at 15–18.) Upon reviewing the video recording, however, Officer Hutchins did not aggressively push Plaintiff. (Defs.' Ex. J.) Nor did Plaintiff fall and injure himself. (*Id.*) Numerous courts have likewise concluded that pushing a noncompliant individual without causing injury does not constitute excessive force. *See, e.g.*, *Figueroa*, 825 F.3d at 105 (affirming directed verdict for defendant officers who "push[ed]" resisting detainee along without causing injury); *Donohue v. Marsh*, 2022 WL 4111025, at \*6 (E.D.N.Y. Sept. 8, 2022) (granting summary judgment where defendant officer pushed plaintiff twice and caused no injury); *Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 242 (S.D.N.Y. 2013) (granting summary judgement and acknowledging that "not every push or shove constitutes excessive force"). Moreover, Officer Hutchins "had probable cause to arrest Plaintiff, such that

21

the use of some force was reasonable." *Rodriguez*, 918 F. Supp. 2d at 242.  Although Officer Hutchins could and should have conducted himself in a better manner, the Court does not deem his push of Plaintiff excessive.

### ii. Officers Hutchins, Kikis, and Saetta Arresting Plaintiff

Plaintiff next alleges that Officers Hutchins, Kikis, and Saetta used excessive force by pinning him against the wall and forcing him to the ground to effectuate his arrest.  (Pl. Opp. at 11–15.)  After Officer Hutchins pushed him, Plaintiff became aggressive, circling and charging at Officer Hutchins with his hands balled into fists.  (Defs.' Ex. J.)  Officer Hutchins acted no better and did the same.  (*Id*.)  Both parties also verbally assaulted one another.  (*Id*.)  While Plaintiff had his back to the storefronts along the sidewalk, he continued verbally assaulting Officer Hutchins while slamming and pointing his forearm toward him.  (*Id*.)  According to Plaintiff, he was demanding to know why he had been pushed.  (Pl. Aff. ¶¶ 26, 34.)  As Plaintiff began pointing at Officer Hutchins, Officers Kikis and Saetta positioned themselves between them in an effort to defuse the situation.  (Defs.' Ex. J.)  Plaintiff continued to have his hands balled into fists.  (*Id*.)  At this moment, Officer Hutchins, with the assistance of Officers Kikis and Saetta, pinned Plaintiff against the wall.  (*Id*.)  The video recording shows that Plaintiff was resisting.  (*Id*.)  The officers then slammed Plaintiff to the ground, after which the view of him became obstructed by observing pedestrians.  (*Id*.)

The Court has already concluded that the Defendant Officers had probable cause to arrest Plaintiff for disruptive conduct.  After being pushed by Officer Hutchins, Plaintiff became aggressive and attempted to fight back on multiple occasions.  (Defs.' Ex. J.)  Moments before Officer Hutchins charged, Plaintiff was screaming, slamming his forearms, and pointing his hands at him.  (*Id*.)  Officer Hutchins therefore charged Plaintiff against the wall in order to place him

under arrest. (*Id.*) The video recording depicts Plaintiff resisting arrest by struggling against being pushed into the wall. (*Id.*) Once up against the wall, Plaintiff continued moving his arms to avoid being handcuffed. (*Id.*) Given Plaintiff's aggressive behavior and resistance, a reasonable officer would have acted as the Defendant Officers did to effectuate the arrest.

Indeed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97; *see also McKinney v. City of Middletown*, 49 F.4th 730, 741 (2d Cir. 2022) (affirming the district court's conclusion that defendant officer did not use excessive force where plaintiff became "extremely combative" and "charged towards the defendants"); *Casiano v. Ashley*, 515 F. Supp. 3d 19, 23 (W.D.N.Y. 2021) (granting summary judgment where plaintiff resisted handcuffing, and defendant officers used successive stabilization measures to gain compliance and complete the arrest, including stabilizing plaintiff to the wall and then ground). And while Officer Hutchins' conduct "may not appear entirely professional," his actions were not "sufficiently serious to amount to a constitutional violation." *Vasquez*, 2020 WL 883514, at *10.

Plaintiff's claim is further undercut by his own testimony, in which he acknowledges that he was unsure whether the Defendant Officers struck him at any point during the arrest. (Pl. Dep. Tr. 30:15–20.) He could only recall that he "felt something" and nothing more. (*Id.*) Because of Plaintiff's combative behavior leading up to the incident, the Court concludes that the Defendant Officers did not use excessive force. Plaintiff cannot take a "combative" stance, "charge[ ] towards the [D]efendants," and then claim that his actions carry no consequences. *See McKinney*, 49 F.4th at 741.

23

### iii.  Alleged Excessive Use of Handcuffs

Finally, the Court turns to Plaintiff's argument that his handcuffs were excessively too tight. "Courts apply a separate standard to claims for excessive force in the use of handcuffs." *Sachs v. Cantwell*, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012).  "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005).  "The injury requirement is 'particularly important.'"  *Usavage v. Port Auth. of New York and New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Sachs*, 2012 WL 3822220, at *14).  In fact, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008); *see Usavage*, 932 F. Supp. 2d at 592 (collecting cases).  "These injuries need not be 'severe or permanent,' but must be more than merely '*de minimis*[.]'"  *Usavage*, 932 F. Supp. 2d at 592 (internal citations omitted).

Plaintiff testified that, as a result of his arrest, he sustained a scrape on his head, a scratch on his ear, and pain in his back.[4]  (Pl. Dep. Tr. 33:12, 35:11–16, 36:2–3.)  Plaintiff's arrest photographs also show a laceration on his left elbow and slight swelling on his right forearm.  (Defs.' Ex. Q at 2, 6.)  Other than the slight swelling of his right forearm, Plaintiff provides no evidence indicating that he suffered severe or permanent injuries from the handcuffs being too tight.  On the contrary, when the ambulance arrived to attend to Plaintiff's injuries, he refused

---

[4] Plaintiff also claims to have suffered "mental damages" as a result of his arrest.  (Defs.' Ex. 1 at 2.)  Beyond the conclusory allegations in the FAC, however, Plaintiff has provided no testimony or other evidence demonstrating that he suffered emotional distress as a result of this incident.  The claim fails as a matter of law.  *See Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 648 (S.D.N.Y. 2020).

24

medical attention. (Defs.' Ex. F at 2.) The Court therefore concludes that the Defendant Officers did not use excessive force in handcuffing Plaintiff—or at all—during the August 20, 2021 incident and grants Defendants' motion for summary judgment on the excessive force claims arising from that date.

### B. July 8, 2022 Arrest

Turning to the July 8, 2022 incident, Plaintiff initially alleges that Officers Martinez and Timpone used excessive force in effectuating his arrest. (Defs.' Mem. at 24–25.) As a preliminary matter, however, it appears that Plaintiff has abandoned any excessive force claim against Officer Timpone. (Pl. Opp at 18–19.) The Court therefore deems all claims against Officer Timpone abandoned and dismisses them accordingly. *See Ragland*, 2022 WL 580923, at *7; *Daley*, 2016 WL 880203, at *8. The remaining issue for the Court's review is whether Officer Martinez used excessive force by punching Plaintiff and applying pressure to his neck during the attempted arrest. (Defs.' Reply at 8.)

Up to this point, the video recordings have been critical to the Court's review of Plaintiff's two arrests. Here, however, is the first instance in which the Court cannot determine from the video recording whether Plaintiff was resisting arrest once on the ground. There is no question that Plaintiff resisted arrest when he was first removed from his motorized scooter. (Defs.' Ex. W.) As the video progresses, it is evident that Officer Martinez raises his fist and punches Plaintiff in the head. (Defs.' Ex. X.) Defendants do not dispute this. (Defs.' Ex. S ¶ 120.) Defendants contend that Officer Martinez resorted to punching Plaintiff because Plaintiff was placing his right hand under his stomach, thereby preventing the officers from handcuffing him. (*Id*. ¶ 19.) Once Plaintiff is on the ground, however, Officers Martinez and Timpone obscure the camera's view of him. (Defs.' Ex. X.) A separate recording depicts a front view of the incident, but it begins only after

25

Officer Martinez punched Plaintiff. (Defs.' Ex. AA.) While Officers Martinez and Timpone are positioned over Plaintiff, there is visible movement near Plaintiff's right arm. (Defs.' Ex. X.) However, the Court may not rely on speculation to conclude that no genuine dispute of material fact exists. Without video evidence capturing this portion of the encounter, "the evidentiary record on Plaintiff's excessive force claim is thin and amounts to no more than 'he said, he said.'" *Swanhart v. Jackson*, 2026 WL 192395, at *7 (S.D.N.Y. Jan. 23, 2026). Plaintiff maintains that he did not resist arrest, while Defendants contend otherwise. (Pl. Aff. ¶ 53 *compare with* Defs.' Ex. S ¶ 19.)

At the summary judgment stage, the Court may not resolve credibility disputes or weigh competing versions of events. Where, as here, the claim turns on sharply conflicting accounts of what occurred, the issue must be resolved by a jury. Nor can the Court conclude that Officer Martinez is entitled to qualified immunity. It is "clearly established law that an officer uses excessive force by punching an arrestee in the jaw and forcing him to the ground… despite failing to immediately comply with an officer's order to put his hands on the wall, is not physically resisting arrest, making any threatening gesture, or attempting to flee." *Cox v. Fischer*, 248 F. Supp. 3d 471, 482 (S.D.N.Y. 2017). The Court therefore denies Defendants' motion for summary judgment as to the excessive force claims arising from the July 8, 2022 arrest.

## IV.    First Amendment – Retaliation Claim

For the first time in his opposition, Plaintiff asserts that Officer Hutchins violated Plaintiff's First Amendment rights by retaliating against him during the August 20, 2021 arrest. (Pl. Opp. at 19.) In response, Defendants argue that the Court should not consider this argument because it was improperly raised for the first time in Plaintiff's opposition. (Defs.' Reply at 9.)

It is well established that "[a] party cannot assert a cause of action for the first time in response to a summary judgment motion." *Greenidge v. Allstate Ins. Co.*, 312 F. Supp. 2d 430, 436–37 (S.D.N.Y. 2004), *aff'd*, 446 F.3d 356, 361 (2d Cir. 2006); *see also Rojo v. Deutsche Bank*, 487 F. App'x 586, 588–89 (2d Cir. 2012) (summary order) ("We have refused to address the merits of claims raised for the first time [in opposition to summary judgment]."); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) ("[C]ourts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment" (quotation marks omitted)).  This is true even in cases filed by *pro se* litigants.  *See Cooney v. Consol. Edison*, 220 F. Supp. 2d 241, 253 (S.D.N.Y. 2002) (holding, in case with *pro se* plaintiff, that "[a] party may not raise new claims for the first time in response to a motion for summary judgment"), *aff'd*, 63 F. App'x 579 (2d Cir. 2003).

Although Plaintiff loosely mentions the First Amendment in the FAC, nowhere does he allege a First Amendment retaliation claim.  It follows that Plaintiff improperly asserts this claim for the first time in his opposition papers.  Regardless of this deficiency, Plaintiff's claim lacks merit.

To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. City of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  The existence of probable cause generally defeats a retaliatory arrest claim, but as the Supreme Court has explained, "a narrow qualification is warranted for circumstances where officers have probable cause to make

arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). "In such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id*. (quoting *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1953 (2018)).

Plaintiff asserts that Officer Hutchins pushed him for engaging in protected speech. (Pl. Opp. at 20.) According to Plaintiff, his disregard and noncompliance with Officer Hutchins' directions to vacate the area of the traffic stop was a "sign of protest" and "silent dissent." (*Id*. at 4, 20.) The Court disagrees. The Court has already concluded that the Defendant Officers had probable cause to arrest Plaintiff for OGA. Because there was probable cause to arrest Plaintiff, his First Amendment claim must fail. *See Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 107 (S.D.N.Y. 2016) (citing *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012)). Plaintiff similarly argues that Officer Hutchins targeted him despite other pedestrians observing the traffic stop. (Pl. Opp. at 20.) Plaintiff, however, admits that Officer Hutchins "targeted [him] because of [their] history." (Pl. Aff. ¶ 18.) That history includes being previously arrested by the MVPD. (Defs.' Ex. C. ¶ 6.) Plaintiff also fails to identify other individuals who posed a threat to the traffic stop or who positioned themselves directly in front of the vehicle, as he did. *See Maradiaga*, 2020 WL 5849465, at *7 (granting summary judgment where plaintiffs failed to provide "objective evidence that [they were] arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech ha[ve] not been").

Finally, Plaintiff asserts that he was arrested because he questioned why Officer Hutchins pushed him back from the vehicle. (Pl. Opp. at 26.) This claim suffers from the same fatal flaw. "The existence of probable cause will defeat… a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence

28

[him]." *Fabrikant*, 691 F.3d at 215. As discussed above, Plaintiff was not arrested for questioning Officer Hutchins. Rather, he was arrested for disorderly conduct after aggressively attempting to charge Officer Hutchins while clenching his hands into fists. (Defs.' Ex. J.) Plaintiff presents no evidence that the Defendant Officers' actions were motivated or substantially caused by his exercise of any First Amendment right. Because the Defendant Officers had probable cause to arrest Plaintiff, his First Amendment retaliation claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

The Court GRANTS Defendants' motion for summary judgment as follows:

1. All claims asserted against Defendants Williams, Rizzo, Culbert, Silvestri, Rucci, Martin, Gibson-Price, and Addison for lack of personal involvement;

2. All potential New York State law claims;

3. All claims asserted against Defendant City of Mount Vernon;

4. Both Fourth Amendment false arrest claims arising from the August 20, 2021, and July 8, 2022 arrests;

5. The Fourth Amendment excessive force claims arising from the August 20, 2021 arrest, thereby dismissing all claims asserted against Defendant Officers Kikis and Saetta;

6. The Fourth Amendment excessive force claim arising from the July 8, 2022 arrest, only with respect to Defendant Officer Timpone; and

7. The First Amendment retaliation claim, thereby dismissing all claims asserted against Defendant Officer Hutchins.

The motion is DENIED only with respect to the Fourth Amendment excessive force claim arising from the July 8, 2022 arrest asserted against Defendant Officer Martinez.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 100 and to terminate Defendants City of Mount Vernon, Williams, Rizzo, Culbert, Silvestri, Rucci, Martin, Gibson-Price, Addison, Hutchins, Kikis, Saetta, and Timpone from this action.  Officer Martinez is the sole remaining defendant.  The Clerk of Court shall mail a copy of this Order to *pro se* Plaintiff at the address listed on ECF.

A telephonic Pretrial Conference is scheduled for April 9, 2026, at 10:00 a.m.  To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (855) 244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) Press pound (#) to enter the teleconference.

SO ORDERED,

Dated: February 17, 2026
     White Plains, NY

_____
Nelson S. Román, U.S.D.J.

30